## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

JOHN JAMES,
individually and on behalf of all others
similarly situated

        Plaintiffs,

vs.

MALLINCKRODT, INC.,
COVIDIEN, INC.,
COTTER CORPORATION,
ROCK ROAD INDUSTRIES, INC.,
REPUBLIC SERVICES, INC.
ALLIED SERVICES, LLC, d/b/a Republic
Services of Bridgeton, and BRIDGETON
LANDFILL, LLC,

        Defendants.

Case No:

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff John James, individually and on behalf of those similarly situated ("Plaintiffs"), for his Class Action Complaint against Defendants Mallinckrodt, Inc., individually and as Successor-in-interest to Mallinckrodt Inc., a Missouri corporation, Covidien, Inc. (the foregoing defendants are collectively referred to herein as "Mallinckrodt"), Cotter Corporation ("Cotter"), Rock Road Industries, Inc., Republic Services, Inc., Allied Services, LLC, d/b/a Republic Services of Bridgeton and Bridgeton Landfill, LLC, (Rock Road Industries, Inc., Republic Services, Inc., Allied Services, LLC, d/b/a Republic Services

1

of Bridgeton and Bridgeton Landfill, LLC are collectively referred to herein as "Republic") state as follows:

## Introduction

1. Plaintiffs bring this action against Defendants seeking redress for damage, loss, and loss of use of property in which Plaintiffs hold an interest as a result of Defendants' acts and omissions, including their negligent acts and omissions, related to the processing, transport, storage, handling, and/or disposal of hazardous, toxic, and radioactive materials in close proximity to residential neighborhoods in and around St. Louis County, Missouri.

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States, namely, the Price-Anderson Act ("PAA") 42 U.S.C. § 2210 *et seq.* This Court may also exercise subject matter jurisdiction over this action pursuant to Section 2210(n)(2) of the PAA, which provides the United States district court in the district where the nuclear incident takes place shall have original jurisdiction with respect to any public liability action arising out of or resulting from a nuclear incident.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper in this judicial district pursuant to 42 U.S.C. § 2210(n)(2) because the nuclear incident(s) giving rise to Plaintiffs' claims took place in this district.

## Parties

4. Plaintiff John James is the owner of certain improved real property located at 12769 Spanish Village Drive, Bridgeton, MO 63044. Plaintiff John James has resided at that property for over thirty years.

5. Defendant Mallinckrodt, Inc., individually and as successor-in-interest to Mallinckrodt Missouri, is a Delaware corporation with its principal place of business in Mansfield, Massachusetts. Upon information and belief, in 1986, Mallinckrodt Missouri was broken up and sold to MI Holdings, Inc. and Mallinckrodt, Inc. Upon information and belief, Mallinckrodt Chemical Works is now known as or has been merged into MI Holdings and/or Mallinckrodt, Inc. Mallinckrodt Nuclear Corporation was formerly a wholly owned subsidiary of Mallinckrodt Chemical Works. Mallinckrodt Chemical Works and Mallinckrodt Nuclear Corporation will be referred to collectively as "Mallinckrodt".

6. Defendant Cotter Corporation ("Cotter"), a Colorado corporation with its principal place of business in Englewood, Colorado, operates as a subsidiary of General Atomics, Inc., a California Corporation. It was purchased by and became a wholly owned subsidiary of Commonwealth Edison in 1975.

7. Defendant Covidien, Inc. ("Covidien"), formerly known as "SWD Holding, Inc.," is a Delaware corporation with its principal place of business in Massachusetts. Covidien, itself or through its agents, conducted business in Hazelwood, Missouri.

8. Defendant Rock Road Industries, Inc. is a Missouri Corporation with its principal place of business in Missouri.

9. Defendant Republic Services, Inc. is a Delaware Corporation, with its principal place of business in the State of Arizona. Republic conducts business in the State of Missouri.

10. Defendant Allied Services, LLC, d/b/a Republic Services of Bridgeton ("Allied") is a Delaware limited liability company, with its principal place of business the State of Missouri.

11. Defendant Bridgeton Landfill, LLC is a Delaware limited liability company with its principal place of business in the State of Missouri.

## Class Allegations

12. Plaintiff John James brings this action for himself individually and as representatives of a class of all other similarly situated plaintiffs. Plaintiffs intend to seek certification of one class.

13. Plaintiffs initially describe the class as all persons and legal entities, including mortgages and other security interests, owning an interest in real property within a 3 mile radius of the West Lake Landfill.

14. Excluded from the class above are Defendants, Defendants' affiliates, parents and subsidiaries, the Court and its immediate family, and any other individuals who have brought individual lawsuits arising from the same allegations against the Defendants.

15. Plaintiff reserves the right to amend or modify the class definitions and/or to move for certification of a class or classes defined differently than set forth above depending on the facts or law as discovered in this action.

16. The class is sufficiently numerous that joinder of all members of the class is impracticable. The exact number and identity of all class members may be ascertained by appropriate discovery, but it is Plaintiff's belief that the proposed class comprises at least 500 individuals and legal entities. Class members may be notified of the pending action by email, mail, and by publication as necessary.

17. There are questions of fact and law common to the class, which common questions predominate over questions affecting only individual members. The common questions include, but are not limited to, the following:

    a. whether Defendants acts or omissions constitutes a "nuclear incident" as defined in the PAA because it was an occurrence within the United States causing the damage, loss, or loss of use of property arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material;

    b. whether Defendants acts or omissions resulted in liability to class members creating a "public liability action" within the terms of the PAA, in that class members have suffered damage, loss, or loss of use of their properties resulting from a nuclear incident or incidents as defined in the PAA;

    c. whether the acts or omissions of Defendants caused or permitted the migration of highly toxic and radioactive materials onto or near to the respective real properties of class members leading to damage, loss or loss of use of their properties;

    d. identification of the precise geographic area of impact resulting from the migration of the highly toxic and radioactive materials.

18. The claims of the representative Plaintiff are typical of the claims of the members of the class. Plaintiff, like other members of the class, has sustained legal injury arising from Defendants' conduct as alleged herein. Plaintiff and the members of the class have suffered and continue to suffer similar or identical injuries-in-fact caused by the same unlawful conduct engaged by Defendants.

19. Plaintiff can and will fairly and adequately represent the interests of the class and have no interests that conflict with or are antagonistic to the interests of the class. Plaintiff has retained counsel who are highly skilled, competent and experienced in complex litigation and who will vigorously assert the claims on behalf of the class members. No conflict exists between Plaintiffs and the class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the class.

20. The class action is an appropriate method for the fair and efficient adjudication of this controversy given the following:

   a. common questions of fact and law predominate over any individual questions that may arise, such that the class action mechanism is superior to other available means for the fair and efficient adjudication of this dispute;

   b. there will be enormous economies to the Court and the parties litigating the common issues in a class action instead of through multiple claims;

c. class treatment is required for optimal resolution of this matter and for limiting the court-awarded reasonable legal expenses incurred by class members;

d. if the size of individual class members' claims are small, their aggregate volume, coupled with the economies of scale in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with the cost of individual litigation;

e. the trial of this case as a class action will be fair and efficient because questions of law and fact which are common to the Plaintiff class predominate over any individual issues that may arise.

## Background

21. During World War II, the nation began a top-secret project to build an atomic bomb. At this time, the Army created the Manhattan Engineering District ("MED") to carry out much of the work of the "Manhattan Project." After the war, the nation sought ways to use nuclear energy for peace-time purposes and formed the Atomic Energy Commission ("AEC") in 1946 to continue this nuclear research. Some of this work was performed in the St. Louis area.

22. From 1942 to 1957, under contracts with the MED and/or the AEC, the Destrehan Street Refinery and Metal Plant (which later became Mallinckrodt Chemical Works) processed natural uranium into uranium oxide, trioxide and metal uranium at a facility in downtown St. Louis, Missouri. This facility became known as the St. Louis

Downtown Site ("SLDS"). The SLDS became contaminated with hazardous, toxic, and radioactive substances as a result of these processes.

23. IN 1946, the MED acquired the St. Louis Airport Site ("SLAPS"), a 21-acre site just north of the St. Louis Airport, for storage of hazardous, toxic, and radioactive waste residues from the SLDS. Beginning in 1946, the hazardous, toxic, and radioactive waste residues left over from the production process at the SLDS were transported to the SLAPS for storage. The SLAPS and adjacent properties became contaminated with hazardous, toxic, and radioactive substances as a result.

24. These hazardous, toxic, and radioactive wastes residues were removed from the SLAPS in various stages throughout the 1960s. Initially, the residues were sold to Contemporary Metals Corporation ("Contemporary Metals"). Soon thereafter, their subsidiary, Continental Mining & Milling Company ("CMM"), began transporting the waste residues to property at 9200 Latty Avenue for storage.

25. After CMM went into receivership, the Commercial Discount Corporation ("CDC") of Chicago, Illinois, took possession of its assets, including the Latty Avenue Property and the hazardous, toxic, and radioactive waste residues stored therein.

26. In 1969, the remaining hazardous, toxic, and radioactive waste residues at Latty Avenue were sold to the Cotter Corporation ("Cotter") of Canon City, Colorado.

### The West Lake Landfill

27. The West Lake Landfill Site is located on a 200-acre parcel at 13570 St. Charles Rock Road in Bridgeton, Missouri, approximately four miles west of the SLAPS, and 17 miles from downtown St. Louis.

28. The West Lake Landfill Site is owned and/or operated by Republic.

29. In 1973, Cotter disposed of approximately 47,700 tons of soil mixed with uranium ore processing residues, including leached barium sulfate, uranium, and thorium, into the West Lake Landfill. This radioactive material was then routinely used as cover for municipal wastes and other landfill operations. As a result, the West Lake Landfill became contaminated with hazardous, toxic, and radioactive wastes.

30. The West Lake Landfill is upstream from the intake sources for the Missouri American Water Company. Furthermore, the West Lake Landfill lies partially within the Missouri River geomorphic flood plain in northwest St. Louis County.

31. The West Lake Landfill is in close proximity to municipal parks, schools, businesses and private residences.

### Cause of Action pursuant to the Price Anderson Act

32. Plaintiffs incorporate by reference the preceding paragraphs herein.

33. In 1958, Congress amended the Atomic Energy Act to implement its policy to foster private sector participation in the nuclear energy industry. These 1957 amendments became known as the Price-Anderson Act ("PAA"). The uranium, thorium, and other radioactive substances processed, handled, stored, and /or disposed by Defendants at the West Lake Landfill include nuclear by-product materials, special nuclear materials, and/or source materials. 42 U.S.C. §2014(e), (z), (aa). Any release of these by-product, special nuclear, or source materials causing bodily injury, sickness, disease, death, loss or damage to property or loss of use of property constitutes a "nuclear incident" under the terms of the Price-Anderson Act. 42 U.S.C. § 2014(q).

34. Plaintiffs further assert Defendants' acts and omissions and negligent releases of hazardous, toxic, and radioactive waste materials have exposed Plaintiffs and their properties to highly dangerous materials and resulted in the loss or damage to property or loss of use of property. Plaintiffs have suffered such loss or damage to property or loss of use of property as a result of the release, discharge, and/or migration of hazardous, toxic, and radioactive waste materials onto their properties or to areas in close proximity to their property. Plaintiffs' cause of action therefore asserts legal liability based upon a "nuclear incident" or a series of such incidents, and is consequently a "public liability action" within the terms of the PAA.

35. Each Defendant's conduct constituted a "nuclear incident" within the meaning of the PAA because it was an occurrence within the United States causing loss or damage to property or loss of use of property arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.

36. Pursuant to the PAA, the substantive law in this action arising under 28 U.S.C. § 2210 shall be derived from the law of the State in which the nuclear incident occurred, namely, Missouri, unless such law is inconsistent with the provisions of such section.

37. Missouri law provides that a party is strictly liable for harm, injury, or damage arising from an abnormally dangerous activity. Missouri law provides that handling nuclear materials constitutes an abnormally dangerous activity.

38. Defendants' conduct, collectively and individually, in the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials posed significant risk of harm to persons living and working in the vicinity of such operations. Defendants' conduct in the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials posed significant risk of harm to property located in the vicinity of such operations. Finally, the processing, handling, storage, and/or disposal of hazardous, toxic and radioactive waste materials have never been a matter of common usage. As such, Defendants' acts and omissions alleged in this complaint constitute abnormally dangerous activities.

39. In addition, with the knowledge of the environmental and health hazards associated with the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials, Defendants chose to conduct their activities near residential communities in St. Louis County, Missouri. Although Defendants' activities were abnormally dangerous per se, the location of such activities in well-populated areas such as St. Louis County, Missouri would independently have rendered them abnormally dangerous.

40. As a direct and proximate result of Defendants' processing, handling, transportation, storage, and/or disposal of hazardous, toxic, and radioactive waste materials from 1942 to present, there have been releases of hazardous, toxic, and radioactive substances into the environment, thereby injuring Plaintiffs, whose injuries include actual and present harm resulting in the damage, loss, or loss of use of their property.

41. Defendants are therefore strictly liable to Plaintiffs for damage, loss, or loss of use of their property which has resulted and which will continue to result from the processing, handling, storage, and/or disposal of radioactive, toxic, and hazardous substances.

42. Missouri law also provides that a party who fails to use due care to avoid injuring another party may be held liable for anything which appears to have been the natural and probable consequence of his act or omission.

43. Defendants owed to Plaintiffs a duty of care which could only be satisfied by the legal, safe, and proper processing, handling, storage, and/or disposal of the radioactive, toxic and hazardous substances in Defendants' possession. Defendants had a duty to prevent the discharge, release, or migration of such substances that might result in damage, loss, or loss of use of Plaintiffs' property. Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic, and hazardous substances, and to warn or notify Plaintiffs of the fact that discharges, releases, or migration of these substances had occurred and were likely to occur in the future.

44. Defendants breached these duties by their reckless, negligent and grossly negligent processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials. Such conduct was in utter non-compliance with applicable federal, state and local laws, regulations and guidelines. Defendants' reckless, negligent, grossly negligent, and illegal conduct resulted in the dangerous release of hazardous, toxic, and radioactive substances into the communities surrounding the West Lake

Landfill. These actual and continued releases have subjected Plaintiffs to an unreasonable risk of harm, and to the damage, loss or loss of use of their properties. Such injuries were reasonably foreseeable. Defendants also failed to warn Plaintiffs of the actual and threatened releases of such hazardous, toxic, and radioactive substances and of the reasonably foreseeable effects of such releases-an omission that was reckless, negligent, and grossly negligent. Finally, Defendants failed to act to prevent their releases from causing damage, loss or loss of use of Plaintiffs' property and other injuries.

45. Because Defendants' conduct was outrageous, grossly negligent, and reckless, Plaintiffs seek punitive damages.

### Prayer for Relief

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, for general damages, special damages, punitive and exemplary damages, prejudgment interest, costs of the action, and such further relief as this Court deems proper.

Respectfully submitted,

FINNEY LAW OFFICE, LLC

/s/ Daniel P. Finney, Jr.

Daniel P. Finney, Jr. MOED #10476
Daniel P. Finney III  MOED # 5202538
Christopher J. Finney MOED # 62888MO

1735 S. Big Bend Blvd.
St. Louis, MO 63117
(314) 646-0300

Attorneys for Plaintiffs